# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GARY CABOZZI, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

ANNA JAQUES HOSPITAL,

     Defendant.

Case No. 1:24-cv-10792-IT

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
## <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   COMMON FACTUAL ALLEGATIONS ...................................................................... 1

III.  STANDARD OF REVIEW ........................................................................................... 2

IV.   ARGUMENT ................................................................................................................ 3

    A.   Plaintiff Plausibly Alleges Injuries-in-Fact ............................................................ 4

        1.   Plaintiff's Allegations of Future Harm Are Sufficient to Establish Injury in Fact .......... 5

        2.   Plaintiff Suffered Harms that are Sufficient to Establish Article III Standing ................ 7

    B.   Plaintiff Has Plausibly Pleaded Cognizable Claims for Relief ........................................... 9

        1.   Plaintiff Has Alleged Cognizable Injuries ........................................................ 9

        2.   The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claim Under Massachusetts Law ..........................................................11

        3.   Plaintiff Plausibly Pleads A Breach of Implied Contract Claim .................................. 13

        4.   Plaintiff Plausibly Pleads Breach of Good Faith and Fair Dealing ............................. 16

        5.   Plaintiff Has Sufficiently Pled Unjust Enrichment ........................................................ 17

V.    CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Fox Hill Vill. Homeowners Corp.*,
424 Mass. 365 (1997) ............................................................................... 12

*Anderson v. Hannaford Bros. Co.*,
659 F.3d 151 (1st Cir. 2011).................................................................... 14

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
411 Mass. 451, 583 N.E.2d 806 (1991) ................................................... 16

*Arthur D. Little Int'l, Inc. v. Dooyang Corp.*,
928 F. Supp. 1189 (D. Mass. 1996)........................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................... 3

*Barnia v. Kaur*,
646 F. Supp. 3d 154 (D. Mass. 2022) ...................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................... 3

*Blum v. Holder*,
930 F. Supp. 2d 326 (D. Mass. 2013), *aff'd*, 744 F.3d 790 (1st Cir. 2014) ........................ 3

*Chang v. Winklevoss*,
95 Mass. App. Ct. 202 (Mass. App. Ct. 2019) ..................................................... 17

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022)............................................................................ 6

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
455 Mass. 458 (2009) ............................................................................... 13

*Erickson v. Pardus*,
551 U.S. 89 (2007)........................................................................................ 3

*Gardiner v. Walmart,*
    No. 20-cv-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021) ..............................11

*Grol v. Safelite Grp., Inc.,*
    297 F. Supp. 3d 241 (D. Mass. 2018) ................................................................. 15

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.,*
    892 F.3d 613 (4th Cir. 2018) ......................................................................... 5, 6

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
    999 F.3d 1247 (11th Cir. 2021) ......................................................................... 5

*In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.,*
    54 F.4th 28 (1st Cir. 2022) ................................................................................ 7

*In re Experian Data Breach Litigation,*
    No. 15-1592, 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ............................................. 7

*In re LastPass Data Security Incident Litigation,*
    No. CV 22-12047, 2024 WL 3580646 (D. Mass. July 30, 2024) ...................................... 9

*In re Marriott, Int'l, Inc. Customer Data Sec. Breach Litig.,*
    440 F. Supp. 3d 447 (D. Md. 2020) ....................................................... 5, 7, 10

*In re Shields Health Care Grp., Inc. Data Breach Litig.,*
    721 F. Supp. 3d 152 (D. Mass. Mar. 5, 2024) ........................................................ passim

*In re TJX Cos. Retail Sec. Breach Litig.,*
    564 F.3d 489 (1st Cir. 2009) ............................................................................ 13

*In re Yahoo! Inc. Customer Data Security Breach Litigation,*
    No. 16-02752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)......................................... 10

*Karter v. Pleasant View Gardens, Inc.,*
    248 F. Supp. 3d 299 (D. Mass. 2017) ................................................................. 17

*Lass v. Bank of Am., N.A.,*
    695 F.3d 129 (1st Cir. 2012) ............................................................................ 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .................................................................................................. 7

*Liss v. Studeny*,
  879 N.E.2d 676 (Mass. 2008) ................................................................................. 15

*Lockwood v. Madeiros*,
  506 F. Supp. 3d 73 (D. Mass. 2020) ...................................................................... 15

*Maio v. TD Bank, N.A.*,
  Case No. 22-10578, 2023 WL 2465799 (D. Mass. Mar. 10, 2023) .............................. 9, 13

*McCormick v. Lischynsky*,
  No. 19-10433, 2019 WL 3429242 (D. Mass. July 30, 2019)........................................... 13

*McMorris v. Carlos Lopez & Assocs., LLC*,
  995 F.3d 295 (2d Cir. 2021) ...................................................................................... 6, 10

*Miller v. Suffolk Cnty. House of Corr.*,
  No. 01-11331, 2002 WL 31194866 (D. Mass. Sept. 27, 2002) ........................................ 3

*Penobscot Nation v. Frey*,
  3 F.4th 484 (1st Cir. 2021) .......................................................................................... 4

*Portier v. NEO Tech. Sols.*,
  No. 17-30111, 2019 WL 7946103 (D. Mass. Dec. 31, 2019), ............................... 5, 12, 13

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021)................................................................................11

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015)...................................................................................... 5

*Robert & Ardis James Found. v. Meyers*,
  474 Mass. 181, 48 N.E.3d 442, (2016) ................................................................... 16

*Salamon v. Terra*,
  477 N.E.2d 1029 (Mass. 1985) ................................................................................. 15

iv

*Scifo v. Alvaria, Inc.*,
　　No. 23-10999, 2024 WL 4252694 (D. Mass., Sept. 20, 2024) ........................................... 9

*Shedd v. Sturdy Mem'l Hosp., Inc.*,
　　No. 2173-CV-498C, 2022 WL 1102524 (Mass. Sup. Ct. Apr. 5, 2022) ..................... 12, 14

*Strategic Energy, LLC v. W. Mass. Elec. Co.*,
　　529 F. Supp. 2d 226 (D. Mass. 2008) ................................................................. 12

*Szulik v. State St. Bank & Trust Co.*,
　　935 F. Supp. 2d 240 (D. Mass. 2013) ................................................................. 12

*Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*,
　　534 F. Supp. 340 (D. Mass. 1982) ..................................................................... 17

*United States v. Students Challenging Regulatory Agency Procedures*,
　　412 U.S. 669 (1973).......................................................................................... 5

*Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp.*,
　　441 Mass. 376, 805 N.E.2d 957 (2004) ............................................................. 16

*Vartanian v. Monsanto Co.*,
　　14 F.3d 697 (1st Cir. 1994) ............................................................................... 3

*Vieira v. First Am. Title Ins. Co.*,
　　668 F. Supp. 2d 282 (D. Mass. 2009) ................................................................. 17

*Webb v. Injured Workers Pharmacy, LLC,*
　　72 F.4th 365 (1st Cir. 2023) ..................................................................... passim

*Webb v. Injured Workers Pharmacy, LLC,*
　　No. 22-CV-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023)....................11, 12, 17

*Weekes v. Cohen Cleary P.C.,*
　　723 F.Supp.3d 97 (D. Mass. Mar. 15, 2024)................................................. 8, 15

v

## I.   **INTRODUCTION**

Plaintiff is before this Court because Defendant Anna Jaques Hospital ("Defendant" or "Anna Jaques") failed to prevent a foreseeable and preventable cyberattack on Plaintiff's confidential health information ("PHI") and personally identifying information ("PII") that Defendant had in its possession and failed to adequately protect (referred to herein as the "Data Breach"). Plaintiff has adequately alleged injuries and provided sufficient facts to plausibly infer that Defendant's failure to protect Plaintiff and the Class' PHI/PII caused actionable damages. Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 27) ("Motion") relies mainly on arguments that have been rejected by the First Circuit and Massachusetts courts, as well as this District Court. For the reasons set forth below, Defendant's Motion should be denied in its entirety.

## II.   **COMMON FACTUAL ALLEGATIONS**

As alleged in Plaintiff's Class Action Complaint (ECF No. 1) ("Complaint"), Anna Jaques is a hospital system based in Essex County, Massachusetts. ¶ 1.[1] In the course of its business, Anna Jaques acquired, collected, and stored Plaintiff's and Class[2] Members' Private Information. ¶ 2. On December 24, 2023, unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' Private Information as hosted with Defendant. ¶ 4. Plaintiff was unaware of the incident until local news outlets reported that Anna Jaques experienced a significant shutdown of "all electronic medical records systems" and "networked computers of any function". ¶¶ 19, 20. Anna Jaques has yet to send direct notices to Class Members impacted by the Data Breach, leaving vulnerable patients such as Plaintiff and Class Members to find out about it through third-party reporting. ¶ 43.

---

[1] References formatted as " ¶ _" are references to Plaintiff's Complaint unless otherwise stated.
[2] The Class is defined in the Complaint as "All individuals within the United States of America whose PHI/PII wasexposed to unauthorized third-parties as a result of the data breach experienced by Defendant on December 24-25, 2023." Compl.  ¶ 28

Defendant's Data Breach harmed Plaintiff and threatens to harm him again, requiring him to spend resources mitigating that risk. The Data Breach exposed his Private Information to criminals who intend to misuse the information for purposes such as selling and marketing. ¶ 44. As a result, he must spend time dealing with the consequences of the Data Breach and mitigating the effects. ¶ 22. Plaintiff has been injured by the material risk to future harm he suffers based on Defendant's breach. ¶ 22. The risk is imminent and substantial, given that the data involved likely includes Social Security numbers and healthcare information[3]. *Id.* This highly sensitive information puts Plaintiff at a high risk of identity theft or fraud. *Id.* Not only that, but Plaintiff has also been injured by the diminution in the value of his PHI/PII, the increased anxiety for his loss of privacy, and anxiety over the impact of cybercriminals accessing, using, and selling his PHI/PII. ¶¶ 23, 24. Through its Motion to Dismiss, Defendant seeks to invalidate Plaintiff's claim. Defendant only seeks to evade any responsibility for its failure to maintain the PHI/PII in its custody securely, and its Motion should be denied.

III.    **STANDARD OF REVIEW**

A plaintiff's complaint must meet standing requirements based on Article III of the Constitution, which limits the judicial Power to Cases and Controversies." *Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365, 369 (1st Cir. 2023) (*"Webb I"*). In addition, "[w]hen reviewing a pre-discovery grant of a motion to dismiss for lack of standing, the Court accepts as true all well-pleaded facts and indulge all reasonable inferences in the plaintiff's favor. The Court applies the same plausibility standard used to evaluate a motion under Fed. R. Civ. P. 12(b)(6). *Id.* at p. 369.

---

[3] Anna Jacques posted a message on its website stating, " [t]he impacted information varies per individual; however, it may include demographic information, medical information, health insurance information, Social Security number, driver's license number, financial information, and other personal or health information that you provided Anna Jacques." *Anna Jaques Hospital Notice Regarding Data Security Incident*, https://ajh.org/news-stories/all-news-stories/news/2024/01/information-about-anna-jaques-hospital-cybersecurity-incident (last accessed December 6, 2024).

2

When reviewing a pre-discovery motion to dismiss under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), a court must accept as true all well-pleaded facts and indulge all reasonable inferences in the plaintiff's favor. *Id.* at p. 371. The issue to be resolved on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [their] claims." *Miller v. Suffolk Cnty. House of Corr.*, No. 01-11331, 2002 WL 31194866, at \*1 (D. Mass. Sept. 27, 2002) (citing *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994)). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must "accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Blum v. Holder*, 930 F. Supp. 2d 326, 333 n. 63 (D. Mass. 2013), *aff'd*, 744 F.3d 790 (1st Cir. 2014).

## IV.    <u>ARGUMENT</u>

Plaintiff's claims readily satisfy Article III standing because he has suffered concrete, particularized injuries in fact that are fairly traceable to Defendant's Data Breach. Additionally, Plaintiff has adequately pleaded the elements of his claims, supporting both damages and injunctive relief. As shown below, Defendant's Motion should be denied.

### A. **Plaintiff Plausibly Alleges Injuries-in-Fact**

Plaintiff's Complaint aptly alleges actual, concrete, and particularized injuries-in-fact, as well as facts that establish a substantial risk of future identity theft, as Plaintiff's personal information is now in the hands of cybercriminals who have already exploited this data to cause injury. "To have standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision". *Penobscot Nation v. Frey*, 3 F.4th 484, 487 (1st Cir. 2021). Plaintiff alleges that his PII and PHI were exposed in the Data Breach due to Defendant's inadequate security measures. This exposure constitutes a concrete injury because Plaintiff's sensitive information is now in the hands of unauthorized third party cybercriminals, putting him at significant risk of identity theft, fraud, and other privacy violations.  Compl. ¶¶ 4, 10. While either of these two categories of injuries is sufficient to satisfy the standing requirements at the pleadings stage in the First Circuit, the Complaint properly pleads other categories of injury. ¶16.

As a result of the Breach, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self-monitoring his accounts with heightened scrutiny and time spent seeking legal counsel regarding his options for remedying and/or mitigating the effects of the Data Breach. "Time spent responding to a data breach can constitute a concrete injury sufficient to confer standing, at least when that time would otherwise have been put to profitable use." *Webb*, 72 F.4th at 369. These injuries alone are sufficient to establish standing.

In *Webb I*, the First Circuit recognized that allegations of exposure of personal information and the time spent mitigating potential harm constitute concrete injuries. The Court emphasized

4

that efforts to address risks, such as heightened account monitoring and exploring credit protection options, are sufficient to establish standing. This analysis supports the conclusion that "plausible allegations of actual misuse [of PII] . . . state a concrete injury under Article III." *Id.* at 373 (citing *In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1262 (11th Cir. 2021))*; see also In re Marriott, Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 459 (D. Md. 2020) (standing satisfied with unauthorized charges and unauthorized accounts for lines of credit). *See also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 690 (7th Cir. 2015) (standing satisfied when at least one named plaintiff alleged misuse or access of personal information); *Portier v. NEO Tech. Sols.*, No. 17-30111, 2019 WL 7946103, at *4 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, No. 17-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 622-623 (4th Cir. 2018) ("[T]he Supreme Court long ago made clear that '[i]n interpreting injury in fact . . . standing [is] not confined to those who [can] show economic harm.'" (quoting *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686 (1973)). Similarly, in this case, Plaintiff alleges a substantial risk of identity theft due to the exposure of PII and PHI and details significant time spent mitigating this harm. These efforts align with *Webb I*'s holding that the risk of harm and time spent addressing it satisfy the injury-in-fact requirement. Accordingly, Plaintiff's allegations of substantial risk and efforts to mitigate potential harm are sufficient to establish standing, and Defendant's Motion to dismiss should be denied.

1. **Plaintiff's Allegations of Future Harm Are Sufficient to Establish Injury in Fact**

Plaintiff faces an additional substantial risk of immediate harm. In determining standing for claims for future risk of identity theft, the Court examines three "non-exhaustive" factors: (1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data;

(2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud. *Webb I*, 72 F.4th at 375 (citing *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 153-54, 157 (3d Cir. 2022). Plaintiff has satisfied all three factors.

First, Plaintiff alleges that his PII and PHI were exposed as the result of the Data Breach incident. Compl. ¶ 23. This targeted breach satisfies the first and second *Webb* factor. Plaintiff has suffered not only actual injury from the breach itself but also faces a substantial and ongoing risk of harm. The exposure of Social Security numbers, medical records, and other sensitive data places Plaintiff at heightened risk for identity theft, medical fraud, and financial theft. Third, the highly sensitive nature of the exposed data inherently increases the risk of identity theft and fraud, satisfying the third *Webb* factor. ¶¶ 8, 22. Moreover, Judge Saris recently found standing where, as here, Plaintiff plausibly alleged an increased risk of harm. *See In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. Mar. 5, 2024) ("Where Plaintiffs show a substantial risk of harm manifesting in the future, 'the element of injury and damage will have been satisfied and the cost of that monitoring is recoverable in tort.'"). *See also*, *Hutton*, 892 F.3d at 622 ("Because the injuries alleged by the Plaintiffs are not speculative, the costs of mitigating measures to safeguard against future identity theft support the other allegations and together readily show sufficient injury in-fact to satisfy the first element of the standing to sue analysis.").

As shown above and detailed in his Complaint, Plaintiff has suffered tangible damages as a result of the Data Breach, including time spent verifying the breach, self-monitoring accounts, and seeking legal counsel. These activities are directly traceable to Defendant's failure to protect

Plaintiff's information. ¶ 21. The risk of future harm from a data breach is not speculative in this case; it is a real and substantial threat. Plaintiff's PHI/PII has been exposed to unauthorized third parties, including cyberhackers, placing him at significant risk of identity theft and fraud. ¶¶ 22-23, 25.

Additionally, Plaintiff has suffered actual damages through time spent mitigating the breach's consequences, and Defendant's failure to notify and secure the data exacerbates the ongoing risk. *Id.* ¶ 54. Therefore, Plaintiff has satisfied the injury-in-fact requirement sufficient to confer standing. Defendant's Motion to dismiss on these grounds should be denied.

**2.   Plaintiff Suffered Harms that are Sufficient to Establish Article III Standing**

Defendant's argument that Plaintiff's alleged harms—specifically the diminution in value of personal information, emotional distress, and time spent mitigating the breach—do not confer standing is unfounded. *See* MTD at p. 6. The First Circuit has made clear that "time spent responding to a data breach can constitute a concrete injury sufficient to confer standing." *Webb I*, 72 F.4th 377 (1st Cir. 2023); *accord. In re Marriott,* 440 F. Supp. 3d at 461 ("[A] growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory.") (quoting *In re Experian Data Breach Litigation*, No. 15-1592, 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016).

Article III does not require that Plaintiff rule out all other possible causes of their injuries: Plaintiff need only allege "that [defendants'] actions led to the exposure and actual or potential misuse of the plaintiffs' PII, making their injuries fairly traceable to [defendants'] conduct." *Webb I*, 72 F.4th at 377 (citing *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28, 41 (1st Cir. 2022), *cert. denied sub nom. Evenflo Co., Inc. v. Xavier, Mike, et al.*, No. 22-1181, 2023 WL 6377930 (U.S. Oct. 2, 2023) (emphasis added)); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable

7

to the defendant's conduct."). Plaintiff need only show "an obvious temporal connection between the [PII misuse] and the timing of the data breach" and that their allegations of misuse were "made in the context of allegations relating to harms [Plaintiffs] suffered because of the data breach." *Webb I*, 72 F.4th at 374.

Defendant argues that the alleged diminution in value of Plaintiff's personal information is not a valid injury because Plaintiff has not claimed to have attempted to sell his data. *See* MTD at *6. This argument misses the mark. The risk of identity theft and fraud arising from sensitive data exposure constitutes real and immediate harm, even in the absence of any actual market transaction. In *In re Shields Health*, 721 F. Supp. 3d at 161, Judge Saris held: "[w]here Plaintiffs show a substantial risk of harm manifesting in the future, the "element of injury and damage will have been satisfied and the cost of that monitoring is recoverable in tort." *See also Weekes v. Cohen Cleary P.C.,* 723 F.Supp.3d 97, 102 (D. Mass. Mar. 15, 2024), ("[T]he First Circuit held that a plaintiff had standing to sue for damages where her PII had not yet been misused") (quoting *Webb I*, 72 F.4th at 374-75.).

Plaintiff's Complaint details specific harm that is far from speculative. Plaintiff plausibly alleges the increased likelihood of future misuse of his sensitive data, a risk directly traceable to Defendant's failure to safeguard it. Compl. ¶ 25, 101. Plaintiff's tangible, actual injuries have already been demonstrated. *See* §IV(A)(1), *supra*; Compl. ¶ 21). These allegations of standing are sufficient to confer standing. *See In re Shields Health,* 721 F. Supp. 3d at 152; *Weekes,* 723 F.Supp.3d at 97.

Defendant next contends that Plaintiff's allegations of emotional distress are too vague and insufficient to support standing. MTD at p. 7. This argument is also misplaced. "Various intangible harms can ... be concrete[,] includ[ing] ... disclosure of private information[ ] and intrusion upon

seclusion." *Scifo v. Alvaria, Inc.*, No. 23-10999, 2024 WL 4252694, at *3 (D. Mass., Sept. 20, 2024). Plaintiff has specifically alleged that he suffered anxiety and distress as a direct result of the Data Breach, and his harm is actual and concrete, not speculative. Compl. ¶ 24[4]. Therefore, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss for lack of standing.

### B. Plaintiff Has Plausibly Pleaded Cognizable Claims for Relief

#### 1. Plaintiff Has Alleged Cognizable Injuries

Plaintiff has adequately alleged actual, cognizable harms proximately caused by the Data Breach, satisfying the essential elements for negligence and breach of implied contract claims. As established in *In re LastPass Data Security Incident Litigation*, allegations of pecuniary loss, mitigation costs, and the substantial risk of future harm due to exposed data are recognized as cognizable injuries under both common law and statutory frameworks. No. CV 22-12047, 2024 WL 3580646, at *6–7 (D. Mass. July 30, 2024). Here, Plaintiff's claims mirror those alleged in *In re LastPass* because the breach involved unauthorized cybercriminal activity, exposing highly sensitive information such as full names, Social Security numbers, and dates of birth, which places Plaintiff at substantial risk of identity theft and other harm.

Contrary to Defendant's assertions, courts have recognized that the risk of future harm constitutes a cognizable injury when sufficiently imminent and substantial. This principle is well-established in *Webb I*, 72 F.4th 365, where the First Circuit held that plaintiffs alleging a substantial risk of identity theft due to a data breach adequately alleged an injury in fact. The Court applied the *McMorris* test, analyzing (1) whether the attack was targeted, (2) whether the information had

---

[4] *See also Maio v. TD Bank, N.A.*, Case No. 22-10578, 2023 WL 2465799, at *13 (D. Mass. Mar. 10, 2023) (finding plaintiffs' allegations of lost sleep, anxiety, and depression sufficient to satisfy the exception to the economic loss doctrine at the motion to dismiss stage)

already been misused—"even if the plaintiffs themselves had not yet experienced identity theft or fraud", and (3) whether the type of information exposed was sensitive, "such that there was a high risk of identity theft or fraud". *Id* at * 375-376 (citing *McMorris,* 995 F.3d at 303). While non-exhaustive and not necessarily determinative, these considerations provide a structured framework to assess standing in data breach cases. The *McMorris* test is significant because it synthesizes principles from various circuit court rulings, creating a structured yet flexible framework for courts to evaluate whether the risk of future harm establishes standing. Here, Plaintiff's allegations satisfy these factors. The Data Breach involved unauthorized cybercriminals shutting down Defendant's systems, clearly indicating the attack was targeted. Although no misuse has yet been alleged, the exposed information—full names, Social Security numbers, and dates of birth—is highly sensitive and at increased risk of misuse, such as fraudulent activity. This plausibly establishes that Plaintiff faces a substantial risk of future harm as a result of the breach.

Defendant's characterization of Plaintiff's claim regarding the diminished value of PII and PHI is similarly flawed. While this Circuit has not directly addressed the issue, other courts evaluating similar issues have held that loss in the value of PII or PHI constitutes a cognizable injury. For example, *In re Marriott*, 440 F. Supp. 3d 447, and *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 16-02752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017), recognized the commoditization of PII by businesses and its market value to consumers. Plaintiff has alleged that cybercriminals' unauthorized access to his PII and PHI has rendered it more susceptible to misuse, thereby diminishing its value. He further asserts that PII and PHI are valuable commodities for which a cyber black market exists. Compl. ¶ 78. Defendant's failure to secure Plaintiff's data led to a loss of control and value, forcing Plaintiff to incur mitigation costs, such as credit monitoring, directly tied to the breach. Defendant's reliance on cases like *Pruchnicki*

10

*v. Envision Healthcare Corp.*, 845 F. App'x 613 (9th Cir. 2021), and *Gardiner v. Walmart*, No. 20-cv-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021), is unpersuasive because those cases involved plaintiffs who failed to show actual economic harm or devaluation. In contrast, Plaintiff's allegations of targeted data exposure, diminished value, and mitigation costs sufficiently establish actionable injury grounded in the recognized market for such information.

Moreover, Defendant's arguments fail to account for Plaintiff's plausibly pled claims of anxiety and emotional distress, which are foreseeable and proximate consequences of the breach. Emotional distress damages are well-recognized when they result directly from a defendant's breach of duty. *Webb v. Injured Workers Pharmacy, LLC* confirmed that a cognizable injury "can be satisfied by a claim of emotional distress." No. 22-CV-10797, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) ("*Webb II*"). Plaintiff alleges that, as a result of Defendant's negligence, he has suffered and will continue to suffer anxiety and emotional distress, among other injuries—claims that constitute cognizable injuries at this stage of litigation. Compl. ¶ 110.

Finally, Plaintiff's allegations establish a clear causal relationship between the data breach and the resulting injuries, satisfying the element of proximate cause. The increased risk of identity theft, diminution in the value of personal information, loss of control over data, emotional distress, and costs incurred in mitigating future harm all stem directly from Defendant's actions. These harms are concrete, particularized, and proximately caused by the breach.

Accordingly, Plaintiff's allegations sufficiently establish actionable injury, and Defendant's motion to dismiss Plaintiff's negligence and breach of contract claims should be denied.

### 2.  The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claim Under Massachusetts Law

Defendant contends that the economic loss doctrine bars Plaintiff's negligence claim. Courts in this District in two comparable data breach cases have already rejected this argument.

11

*See Webb II*, 2023 WL 5938606, at *2 (finding plaintiffs were harmed by defendants' data breach and plaintiffs' negligence claim was not barred by the economic loss doctrine); *Portier*, 2019 WL 7946103 at *22, *report and recommendation adopted*, 2020 WL 877035 (holding that Massachusetts is among those states "that permit recovery for economic losses in data breach cases"); *see also Shedd v. Sturdy Mem'l Hosp., Inc.*, No. 2173-CV-498C, 2022 WL 1102524, at *8 (Mass. Sup. Ct. Apr. 5, 2022) (declining to apply economic loss doctrine in a data breach case involving loss of private health information because there was a "special relationship" between hospital and patient). The Court should similarly reject Defendant's economic loss argument here.

Plaintiff's Complaint alleges that Defendant's duty to protect consumers' PII and PHI is imposed by state and federal laws, and independent from any contract. Compl., ¶¶ 33, 45, 69. For this reason, too, the economic loss rule does not apply. *See Strategic Energy, LLC v. W. Mass. Elec. Co.*, 529 F. Supp. 2d 226, 236 (D. Mass. 2008) (negligent breach exception to economic loss doctrine applies where the breach is a violation of "an independent duty imposed by law that regulates the relationship between the parties") (citations and internal quotation marks omitted); *see also Szulik v. State St. Bank & Trust Co.*, 935 F. Supp. 2d 240, 271 (D. Mass. 2013) ("Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort.") (quoting *Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 368 (1997)); *Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 928 F. Supp. 1189, 1203 (D. Mass. 1996) (economic loss doctrine does not apply to claims for "negligent breach of contractual duties").

Plaintiff's claims are further bolstered by the anxiety and emotional distress he suffered as a result of the Data Breach. Compl. ¶¶ 24, 110. These claims provide an independent exception to the economic loss doctrine. *Id*. *See, e.g., Webb II*, 2023 WL 5938606, at *3 (citing *McCormick v.*

*Lischynsky*, No. 19-10433, 2019 WL 3429242, at *5 (D. Mass. July 30, 2019)); *see also Maio*, 2023 WL 2465799, at *4 (allegations including anxiety sufficient to overcome motion to dismiss negligence claim on economic loss doctrine grounds). Plaintiff suffers clear, immediate harm from Defendant's failure to secure his data, including increased fraud risk, diminished information value, and foreseeable anxiety and emotional distress. These tangible and quantifiable injuries distinguish Plaintiff's claims from those in *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489 (1st Cir. 2009) and *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458 (2009). *See Portier*, 2019 WL 7946103, at *18. ("[T]he legal landscape concerning liability for data breaches and identity theft is substantially different than it was when *TJX* and *Cumis* were decided [over] ten years ago.").

In sum, Defendant's reliance on the economic loss doctrine is misplaced. The Court should, therefore, deny Defendant's motion to dismiss Plaintiff's negligence claim based on the economic loss doctrine.

### 3.   Plaintiff Plausibly Pleads A Breach of Implied Contract Claim

Plaintiff plausibly alleges with specificity that an implied contract with Defendant existed and that this contract was breached. Under Massachusetts law, a contract can be implied in fact or implied in law. In "the absence of an express agreement, an implied contract may be inferred from the conduct of the parties and the relationship of the parties." *In re Shields Health,* 721 F. Supp. 3d at 162 (internal quotations omitted) (citing *T.F. v. B.L.*, 813 N.E.2d 1244, 1249 (Mass. 2004)).

Recently, this Court has previously found that plaintiffs plausibly alleged an implied contract with the defendant to safeguard their private information where the plaintiffs would receive medical treatment in exchange for providing confidential health and financial information, and the defendant was responsible for keeping that information private "consistent with relevant

13

data privacy laws." *See In re Shields Health*, 2024 WL 939219, at \*5 (*citing Shedd*, 2022 WL 1102524, at \*10) (finding a plausible implied contract by healthcare provider to protect private information patients were required to disclose).

Moreover, courts in the First Circuit have found that in data breach cases, an implied contract exists between a plaintiff and a defendant where the plaintiff provides the defendant with private information in order to conclude their transaction and there is thus an implicit agreement that the defendant will safeguard the data. *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011). The Court in *Anderson* held that customers typically do not anticipate merchants to permit unauthorized third parties to access their data. Thus, "[a] jury could reasonably conclude, therefore, that an implicit agreement to safeguard the data is necessary to effectuate the contract." *Id.* at 158-59. Although *Anderson* was decided under Maine law, its reasoning is equally applicable under Massachusetts law, particularly in the medical context here, where highly sensitive information like Social Security numbers is involved. Unlike payment card data in *Anderson*, Social Security numbers cannot be canceled or changed, underscoring their critical nature. Similarly, the court in *Shedd* upheld a breach of implied contract claim in comparable circumstances, finding that, under Massachusetts law, "when a patient hands over sensitive information to receive medical care, they expect an implicit assurance that the information will be protected." 2022 WL 1102524, at \*10. The Court should rule similarly here and deny Defendant's Motion on this count.

Defendant's claim that Plaintiff has not alleged a meeting of the minds or mutual intent to support the contract terms is baseless. Defendant's acceptance of Plaintiff's PHI/PII as a condition of service is a clear manifestation of this assent. Plaintiff expressly alleges that Defendant, through its own assurances and representations, assumed legal and equitable duties to protect Plaintiff's

14

PHI/PII and that Plaintiff reasonably expected that Defendant would comply with federal and industry standards to protect this information. Compl. ¶¶ 45-46, 53, 55, 113,118.

Alternatively, Plaintiff alleges a contract implied in law under which he can prevail. *See*, *In re Shields Health,* 721 F. Supp. 3d at 163 ("[I]n the absence of allegation of assent either expressly or by conduct, Plaintiffs can prevail if they demonstrate a contract implied in law."). A contract implied in law is an obligation created by law "for reasons of justice, without any expression of assent or sometimes even a clear expression of dissent[.]" *Id.* (citing *Salamon v. Terra*, 477 N.E.2d 1029, 1031 (Mass. 1985)). It is appropriate for the Court to find a contract implied in law when, as here, "reasonable expectations" of the plaintiffs would otherwise be "defeated." *Id.* (citing *Liss v. Studeny*, 879 N.E.2d 676, 683 (Mass. 2008)). Generally, whether an implied contract exists is a question for the factfinder. *Lockwood v. Madeiros*, 506 F. Supp. 3d 73, 81 (D. Mass. 2020) (citing *Grol v. Safelite Grp., Inc.*, 297 F. Supp. 3d 241, 47 (D. Mass. 2018)).

Defendant's reliance on *Weekes,* 723 F. Supp. 3d 97 in this context is misplaced. In *Weekes*, the defendant was a law firm that was not subject to the same obligations as Defendant here. *Id.* at *100. Here, as in *Shields*, Defendant is a healthcare provider subject to both HIPAA and the FTCA. Plaintiff adequately pleads that Defendant's violations of these federal laws in conjunction with the Data Breach resulted in a breach of implied contract. Compl. ¶¶ 45, 59-69, 97.

Defendant's claim that there has been no material breach is equally unavailing. Plaintiff has alleged that his PHI/PII was accessed or compromised due to the Defendant's inadequate security measures, resulting in a heightened risk of identity theft, fraud, and other harms. Compl. ¶¶ 75-76, 88, 105. Whether or not the Plaintiff has identified the specific outcome of the breach, the unauthorized exposure of sensitive information constitutes a clear violation of the implied agreement to protect it. Plaintiff has also alleged that Defendant failed to provide timely and

15

accurate notification of the breach, further exacerbating the harm and breaching the implied contract. Compl. ¶¶ 43, 85, 121. This Court should, therefore, deny Defendant's motion to dismiss Plaintiff's breach of implied contract claim.

### 4. Plaintiff Plausibly Pleads Breach of Good Faith and Fair Dealing

In Massachusetts, "The covenant of good faith and fair dealing is implied in every contract." *Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004). This covenant protects against conduct that destroys or injures another party's right to receive the fruits of the contract, even if such conduct does not directly violate an express term. *See Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471, 583 N.E.2d 806, 820 (1991). "In determining whether a party violated the implied covenant of good faith and fair dealing, we look to the party's manner of performance." *Robert & Ardis James Found. v. Meyers*, 474 Mass. 181, 189, 48 N.E.3d 442, 450 (2016). Defendant incorrectly contends that a claim for breach of the implied covenant cannot exist without a breach of an express contractual term. While it is true that the covenant arises within the context of a contractual relationship, Plaintiff has adequately alleged the existence of an implied contract under which Defendant was obligated to protect Plaintiff's PII/PHI.

Defendant further asserts that Plaintiff's claim must fail because he has not sufficiently pleaded bad faith. However, Plaintiff has alleged that Defendant violated his reasonable expectation of being notified that the incident impacted his information and that Defendant further acted in bad faith by not informing of the scope of the breach. *See In re Shields Health,* 721 F. Supp. 3d 164 (holding that the plaintiff sufficiently established that defendant lacked good faith based on the defendant's failure to perform obligations related to notice and timely responses). Plaintiff has alleged that Defendant has not provided accurate and timely notice to its clientele about the Data Breach. Compl. ¶¶ 43, 85, 121. It is reasonable for Plaintiff to expect to be notified

16

of the Data Breach incident with relevant details about the incident, including the scope and causes of the incident. However, in failing to provide this notice, Defendant lacked good faith and breached its duties. Plaintiff's allegations, taken as true at this stage, provide a sufficient basis to conclude that Defendant's conduct violated the implied covenant of good faith and fair dealing.

### 5.  Plaintiff Has Sufficiently Pled Unjust Enrichment

Under Massachusetts law, unjust enrichment is defined as "the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982). In addition, "[i]t is accepted practice to pursue both breach of contract and unjust enrichment claims at the pleading stage. Fed. R. Civ. P. 8(d) permits the plaintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment even where plaintiffs only can recover under one of these theories. *Barnia v. Kaur*, 646 F. Supp. 3d 154, 160 (D. Mass. 2022). *See also*, *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) (citing *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 294-95 (D. Mass. 2009) (Rule 8(d) "permits Plaintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs only can recover under one of these theories")); *see also Webb II*, 2023 WL 5938606, at *4 ("[A]t the pleading stage, a plaintiff is permitted to plead claims in law and equity in the alternative.") (citing *Chang v. Winklevoss*, 95 Mass. App. Ct. 202, 211 (Mass. App. Ct. 2019)); *Karter v. Pleasant View Gardens, Inc.*, 248 F. Supp. 3d 299, 311–12 (D. Mass. 2017) (denying motion to dismiss unjust enrichment claim).

Defendant argues that Plaintiff fails to allege he conferred an unjust benefit on Anna Jaques. *See* MTD at *15. That is incorrect. Plaintiff plausibly alleges: (1) he provided a direct benefit and  something of monetary value—their PII and PHI—to Defendant; (2) Defendant

17

benefitted from his ability to retain and use this information; and (3) Plaintiff did not confer this benefit gratuitously. Compl. ¶¶ 130, 135. Plaintiff pleads that, in exchange, he intended that a portion of revenue derived from their PII and PHI would be applied to data security. Instead, Defendant profited by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PHI/PII. *Id* ¶ 93. Accordingly, Defendant's retention of the benefits conferred upon it by Plaintiff would be unjust because, rather than fund adequate and reasonable data security measures, Defendant chose to divert those funds for its profit. *Id* ¶135. An analogous unjust enrichment claim in the data breach context was sustained in this District earlier this year in *In re Shields Health*, 2024 WL 939219. There, the Court held: "Plaintiffs allege that Shields unjustly enriched itself by accepting reimbursement for treatment but not using it 'to pay for the administrative costs of reasonable data privacy and security.' [ . . . ] The Court will not dismiss this count as an alternative theory of relief." *Id*. at p. 7. Like *Shields*, Plaintiff pleads that Defendant gained profits, benefits, and compensation, in part, at the expense of Plaintiff and Class Members, by falsely representing that their data-security safeguards met reasonable standards, or by omitting material facts to the contrary. Compl. ¶-¶ 134-135. By reallocating funds that were meant for data security, Defendant unjustly profited from its failure to safeguard the Plaintiff's sensitive information. *Id* ¶ 136. Plaintiff has properly alleged all elements of this claim. Accordingly, the motion to dismiss Plaintiff's unjust enrichment claim should be denied.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendant's Motion to Dismiss in its entirety.

Dated: December 6, 2024                    Respectfully submitted,

                                    By:    */s/ James J. Reardon*

                                           James J. Reardon (BBO# 566161)
                                           **REARDON SCANLON LLP**
                                           45 South Main Street, 3rd Floor
                                           West Hartford, CT 06107
                                           T: (860) 944-9455
                                           james.reardon@reardonscanlon.com

                                           **LAUKAITIS LAW LLC**
                                           Kevin Laukaitis
                                           954 Avenida Ponce De Leon
                                           Suite 205, #10518
                                           San Juan, PR 00907
                                           T: (215) 789-4462
                                           klaukaitis@laukaitislaw.com

                                           *Pro Hac Vice*

                                           *Attorneys for Plaintiff and the Class*

19

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, a true and correct copy of the forgoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: December 6, 2024                                                  _/s/ James J. Reardon_
                                                                                    James J. Reardon

20