**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| *In re Anna Jaques Hospital Data Security Incident Litigation* | Case No. 1:24-cv-10792-IT |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

# Table of Contents

Table of Contents..................................................................................................................... i

Table of Authorities ................................................................................................................. ii

I.    Introduction.................................................................................................................... 1

II.   Factual Background ........................................................................................................ 1

III.  Argument ....................................................................................................................... 2

   A.   Plaintiffs Have Standing to Pursue Their Claims ................................................... 3

     1.   Plaintiffs Suffered a Concrete Injury-in-Fact ................................................. 3

       a.   The Actual Misuse of Plaintiffs' PII/PHI Is a Concrete Injury ................................. 3

       b.   Plaintiffs Face a Substantial Risk of Future Harm........................................ 4

     2.   Plaintiffs' Injuries Are Traceable to the Data Breach........................................ 7

   B.   Plaintiffs Adequately Pleaded Their Claims for Relief .......................................... 9

     1.   Plaintiffs Have Sufficiently Pleaded Their Negligence Claim ....................................... 9

       a.   Plaintiffs Allege Actual Injury.................................................................. 9

       b.   Plaintiffs Sufficiently Allege Causation ................................................. 10

       c.   Plaintiffs' Negligence Claims Are Not Barred by the Economic Loss Doctrine ..... 11

     2.   Plaintiffs Adequately Plead Breach of Fiduciary Duty................................................. 12

     3.   Plaintiffs Plausibly Plead a Breach of Implied Contract Claim................................... 14

     4.   Plaintiffs Plausibly Plead Breach of the Covenant of Good Faith and Fair Dealing.... 16

     5.   Plaintiffs Adequately State a Claim for Unjust Enrichment....................................... 17

     6.   Plaintiffs' Sufficiently Plead a New Hampshire Consumer Protection Act Claim ...... 19

IV.   Conclusion ................................................................................................................... 19

**Table of Authorities**

**Cases**

*Adams v. Cong. Auto Ins. Agency, Inc.*,
65 N.E.3d 1229 (Mass. App. Ct. 2016) ................................................................. 13

*Alantra LLC v. Apex Indus. Techs. LLC*,
636 F. Supp. 3d 223 (D. Mass. 2022) ................................................................... 18

*Anderson v. Hannaford Bros. Co.*,
659 F.3d 151 (1st Cir. 2011) ................................................................................. 14

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
583 N.E.2d 806 (Mass. 1991) ............................................................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 2

*Conservation Law Found., Inc. v. Acad. Express, LLC*,
129 F.4th 78 (1st Cir. 2025) .................................................................................... 7

*De Prins v. Michaeles*,
189 F. Supp. 3d 209 (D. Mass. 2016) ................................................................... 12

*Doe v. Harbor Sch., Inc.*,
843 N.E.2d 1058 (Mass. 2006) ............................................................................. 12

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ......................................................... 11, 12, 13

*Hartigan v. Macy's, Inc.*,
501 F. Supp. 3d 1 (D. Mass. 2020) ...................................................................... 6, 9

*Harvey v. Nat'l Amusements, Inc.*, No. 24-10027-GAO,
2025 U.S. Dist. LEXIS 57256 (D. Mass. Mar. 27, 2025) ..................................... 9, 15

*In re LastPass Data Sec. Incident Litig.*,
742 F. Supp. 3d 109 (D. Mass. 2024) .............................................................. passim

*In re MAPFRE Data Disclosure Litig.*, No. 1:23-cv-12059-IT,
2025 U.S. Dist. LEXIS 62111 (D. Mass. Mar. 31, 2025) ...................................... 7, 8

*In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-md-03083-ADB-PGL,
2024 U.S. Dist. LEXIS 224712 (D. Mass. Dec. 12, 2024) .............................. 4, 5, 6, 8

*In re Moveit Customer Data Sec. Breach Litig.*, No. 1:23-md-3083-ADB-PGL,
     2025 U.S. Dist. LEXIS 147106 (D. Mass. July 31, 2025)........................................................ 11

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
     721 F. Supp. 3d 152 (D. Mass. 2024) ................................................................................. passim

*Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*,
     210 F. Supp. 3d 294 (D. Mass. 2016) ........................................................................................ 18

*Katz v. Pershing, LLC*,
     672 F.3d 64 (1st Cir. 2012)..................................................................................................... 6, 7

*Krottner v. Starbucks Corp.*,
     406 F. App'x 129 (9th Cir. 2010) ............................................................................................. 15

*Lockwood v. Madeiros*,
     506 F. Supp. 3d 73 (D. Mass. 2020) .......................................................................................... 16

*Lujan v. Defs. of Wildlife*,
     504 U.S. 555 (1992).................................................................................................................... 7

*Lyman v. Baker*,
     954 F.3d 351 (1st Cir. 2020)....................................................................................................... 2

*Medina-Claudio v. Rodriguez-Mateo*,
     292 F.3d 31 (1st Cir. 2002)......................................................................................................... 3

*Portier v. NEO Tech. Sols.*, No. 3:17-cv-30111-TSH,
     2019 U.S. Dist. LEXIS 227494 (D. Mass. Dec. 31, 2019)................................................. 11, 12

*Portier v. NEO Tech. Sols.*, No. 3:17-cv-30111-TSH,
     2020 U.S. Dist. LEXIS 28518 (D. Mass. Jan. 30, 2020) ........................................................... 11

*Priddy v. Zoll Med. Corp.*, No. 1:23-cv-10575-IT,
     2025 U.S. Dist. LEXIS 62112 (D. Mass. Mar. 31, 2025)................................................... passim

*Robert & Ardis James Found. v. Meyers*,
     48 N.E.3d 442 (Mass. 2016) ...................................................................................................... 16

*Ryba v. LaLancette*,
     417 F. Supp. 2d 199 (D. Mass. 2006) .......................................................................................... 9

*Shea v. Am. Int'l, Coll.*, No. 1:24-CV-114499-AK,
     2025 U.S. Dist. LEXIS 173358 (D. Mass. Sept. 5, 2025) .......................................................... 11

*Shedd v. Sturdy Mem'l Hosp.*, No. 2173CV00498C,
     2022 Mass. Super. LEXIS 7 (Apr. 5, 2022) ......................................................................... 12, 14

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
   332 F. Supp. 3d 446 (D. Mass. 2018) ...................................................................... 17

*T.F. v. B.L.*,
   813 N.E.2d 1244 (Mass. 2004) ............................................................................... 14

*Taylor v. Ukg, Inc.*,
   693 F. Supp. 3d 87 (D. Mass. 2023) ........................................................................ 6

*Tomasella v. Nestle USA, Inc.*,
   962 F.3d 60 (1st Cir. 2020) ..................................................................................... 17

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................................................. 3

*Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*,
   805 N.E.2d 957 (Mass. 2004) ................................................................................ 16

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) ............................................................................ passim

*Webb v. Injured Workers Pharmacy, LLC*, No. 22-cv-10797,
   2023 U.S. Dist. LEXIS 161097 (D. Mass. Sept. 11, 2023) ......................... 12, 15, 18

*Weekes v. Cohen Cleary P.C.*,
   723 F. Supp. 3d 97 (D. Mass. 2024) ...................................................... 4, 10, 12, 15

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................. 17

## I.     Introduction

Plaintiffs bring this action against Defendants Anna Jaques Hospital ("AJH") and Beth Israel Lahey Health, Inc. ("BILH," and with AJH, "Defendants") for their failure to prevent a massive data breach in which cybercriminals stole their highly sensitive personal and health information and posted that information on the dark web. The Court should deny Defendants' motion to dismiss in its entirety because Plaintiffs have standing due to the actual fraud they have suffered and the substantial risk of future harm resulting from Defendants' failures, and because they have adequately pleaded all of their claims.

## II.     Factual Background

AJH is a hospital serving parts of New Hampshire and Massachusetts and is part of the BILH system. Consol. Class Action Compl., ECF No. 73 ("Compl."), ¶ 71. On or about December 25, 2023, AJH discovered that an unauthorized third party had gained access to its network systems and accessed and acquired files containing the personally identifiable information ("PII") and personal health information ("PHI") of approximately 316,342 current and former patients of Defendants, including Plaintiffs (the "Data Breach"). *Id.* ¶ 3. The PII/PHI accessed and stolen in the Data Breach includes highly sensitive information such as names, demographic information, medical information, health insurance information, Social Security numbers, driver's license numbers, financial information, and more. *Id.* ¶ 80.

On January 19, 2024, the notorious Money Message ransomware group claimed responsibility for the Data Breach. *Id.* ¶ 81. On January 26, 2024, the Money Message ransomware group "published the entirety of the PII/PHI stolen from Defendants on their dark web site," where the information was easily accessible for cybercriminals, identity thieves, and fraudsters to download, monetize, and misuse through at least December 2024. *Id.* ¶¶ 82, 86. Defendants did

1

not notify Plaintiffs that their PII/PHI had been stolen until approximately December 5, 2024 (nearly a year after the Data Breach) and never informed Plaintiffs that their PII/PHI had been published on the dark web for at least 11 months. *Id.* ¶ 85.

Plaintiffs are all patients of Defendants whose PII/PHI was accessed and stolen in the Data Breach. *Id.* ¶¶ 8, 11, 18, 21, 27, 30, 36, 39, 46, 49, 57, 60. Plaintiffs allege numerous harms they suffered a result of the Data Breach and subsequent publication of their PII/PHI on a criminal dark web data leak site. Plaintiffs Kinney and McNeal experienced fraudulent charges on their credit cards after the Data Breach. *Id.* ¶¶ 13, 23. Criminals tried to fraudulently open credit cards in Plaintiff Edwards' name several times and even hacked into and attempted to change the information associated with one of her financial accounts. *Id.* ¶ 41. Plaintiffs Edwards and Willette were notified their PII/PHI was found on the dark web after the Data Breach. *Id.* ¶¶ 41, 51. Plaintiffs also have suffered an increase in the number of phishing and spam calls, texts, and emails they receive. *Id.* ¶¶ 14, 24, 32, 41, 54. Plaintiffs further allege lost time and opportunity costs spent addressing the fraud and identity theft they suffered and trying to mitigate further harm, as well as emotional distress caused by the Data Breach and its consequences. *Id.* ¶¶ 13, 15, 23, 33, 42–43, 52–53, 62, 64, 104.

## III.    Argument

The Court applies the same standard when deciding a motion to dismiss under Rule 12(b)(1) and 12(b)(6). *See Lyman v. Baker*, 954 F.3d 351, 359–60 (1st Cir. 2020). To survive a motion to dismiss, Plaintiffs need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

considering a motion to dismiss, the Court takes all factual allegations as true and draws all inferences in the plaintiffs' favor. *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34 (1st Cir. 2002). A complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief. *See id.*

### A.      Plaintiffs Have Standing to Pursue Their Claims

To establish standing, Plaintiffs must "show an injury in fact caused by the defendant and redressable by a court order." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372 (1st Cir. 2023) (citations omitted). Plaintiffs have the burden of proof to demonstrate standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021).

### 1.      Plaintiffs Suffered a Concrete Injury-in-Fact

### a.      The Actual Misuse of Plaintiffs' PII/PHI Is a Concrete Injury

Plaintiffs Kinney, McNeal, Bates, Edwards, and Willette have standing because they plausibly allege the Data Breach resulted in the actual misuse of their PII/PHI. The law in this Circuit is clear: allegations of actual misuse of PII/PHI after a data breach satisfy the concrete injury element of standing. *Webb*, 72 F.4th at 374. Plaintiffs allege that as a result of the Data Breach and publication of their PII/PHI on the dark web, they suffered actual fraud, hacked accounts, and increased spam and phishing attempts. Compl. ¶¶ 13–14, 23–24, 32, 41, 54. As alleged in the Complaint, these are the exact kinds of injuries that arise when a person's PII/PHI is on the dark web and being misused. *Id.* ¶¶ 83 ("Signs that a person's PII/PHI is available on the dark web and is being misused include . . . spam calls, emails, or messages, and unfamiliar purchases on credit cards."), 97–98 (fraudulent charges, account hacking).

Numerous decisions from this District have held that similar allegations satisfy the concrete injury-in-fact element of standing. *Priddy v. Zoll Med. Corp.*, No. 1:23-cv-10575-IT, 2025 U.S. Dist. LEXIS 62112, at *9 (D. Mass. Mar. 31, 2025) (attempted fraudulent transactions, fraudulent

credit card applications, notification information found on dark web, increased spam and phishing); *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 121 (D. Mass. 2024) (same); *see also In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-md-03083-ADB-PGL, 2024 U.S. Dist. LEXIS 224712, at *67 (D. Mass. Dec. 12, 2024). The plausible allegations of actual misuse of Plaintiffs' PII/PHI as a result of the Data Breach establishes Plaintiffs' standing to pursue their claims. *Webb*, 72 F.4th at 373.

Contrary to Defendants' assertions, Plaintiffs are not required to plead they paid for the fraudulent charges. Mem. in Supp. of Defs.' Mot. to Dismiss, ECF No. 82 ("Mot."), at 8. In *Webb*, the First Circuit soundly rejected an "argument that the alleged actual misuse is not itself a concrete injury absent even more resulting harm to [plaintiffs]." *Webb*, 72 F.4th at 374. The First Circuit was clear that it considered "actual misuse of a plaintiff's PII resulting from a data breach to itself be a concrete injury." *Id.* Further allegations that Plaintiffs were required to pay the fraudulent charges incurred as a result of the Data Breach are not required. *Id.*; *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *13 n.7 (rejecting defendant's "narrow characterization of misuse as only including successful debit or credit card fraud while excluding . . . attempted debit or credit card fraud").

<b>b.      Plaintiffs Face a Substantial Risk of Future Harm</b>

The substantial risk of future harm Plaintiffs face as a result of the Data Breach independently establishes all Plaintiffs' standing. *See Webb*, 72 F.4th at 374–75; *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 102–03 (D. Mass. 2024). In *Webb*, the First Circuit outlined three factors informing whether the risk of future harm arising from a data breach is "imminent and substantial" for standing purposes:

> (1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud.

4

*Webb*, 72 F.4th at 375 (citation omitted). All of these factors support Plaintiffs' standing here.

The Data Breach was the result of a targeted attack by a sophisticated cybercriminal group who specifically intended to steal valuable PII/PHI from Defendants' network systems. Plaintiffs allege an unauthorized third party gained access to Defendants' network systems and "accessed and acquired files containing the PII/PHI of Plaintiffs and Class members." Compl. ¶ 80. The Money Message ransomware group are known to employ a "double extortion technique" in which they exfiltrate data from their target's system. *See id.* ¶ 81. Because "[i]t stands to reason that data compromised in a targeted attack is more likely to be misused," *Webb*, 72 F.4th at 375, courts find similar allegations support standing. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *19–20 (finding similar allegations sufficient); *In re MOVEit*, 2024 U.S. Dist. LEXIS 224712, at *54–57.

Plaintiffs' allegations of the extensive misuse of their PII/PHI resulting from the Data Breach also support standing. *Webb*, 72 F.4th at 376 (misuse allegations indicate "other portions of the stolen data will be similarly misused"); *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *19.

The highly sensitive nature of the PII/PHI stolen in the Data Breach and published on the dark web further supports Plaintiffs' standing. Plaintiffs allege that the sensitive PII/PHI stolen in the Data Breach "is valuable and frequently targeted by criminals," and that victims are more at risk for identity theft and scams once it is published on the dark web. *See* Compl. ¶¶ 83, 88. This also weighs in favor of Plaintiffs' standing. *See Webb*, 72 F.4th at 376 (names and Social Security numbers); *In re MOVEit*, 2024 U.S. Dist. LEXIS 224712, at *68 (Social Security numbers, financial information, protected health information, and "other personally identifiable information"); *In re LastPass*, 742 F. Supp. 3d at 121 (Social Security numbers, driver's license numbers, and financial information).

Defendants assert Plaintiffs cannot establish standing based on the future risk of harm alone. Mot. at 5–6. Their argument fails because Plaintiffs' lost time, mitigation efforts, and emotional distress are separate concrete, present harms entitling them to pursue damages.[1] Compl. ¶¶ 13, 15, 23, 33, 42–43, 52–53, 62, 64, 104; *Webb*, 72 F.4th at 376 (lost time and opportunity costs sufficient); *In re MOVEit*, 2024 U.S. Dist. LEXIS 224712, at *69 ("mitigation efforts, lost time, and emotional damages" sufficient).

Defendants argue Plaintiffs do not allege an injury in fact because they "fail to allege any actual misuse of any of their personal information." Mot. at 6. Defendants' argument is both factually and legally incorrect. Plaintiffs allege multiple instances of actual misuse of their PII/PHI, and *Webb* makes clear that plaintiffs can derive standing from a substantial risk of future harm. *Webb*, 72 F.4th at 374–76. *Taylor* is distinguishable because that court's holding turned on the plaintiffs' failure to allege "any misuse of their or others' information resulting from the alleged data breach."[2] *Taylor v. Ukg, Inc.*, 693 F. Supp. 3d 87, 98 (D. Mass. 2023). *Katz* is similarly inapposite because there, the plaintiff did not allege "that her nonpublic personal information actually ha[d] been accessed by any unauthorized person." *Katz v. Pershing, LLC*, 672 F.3d 64, 79 (1st Cir. 2012); *see Webb*, 72 F.4th at 373 (discussing *Katz*).

Plaintiffs have established a substantial risk of future harm and related present injuries sufficient to allege a cognizable injury and thus have standing to pursue their claims.

---

[1] Plaintiffs may have standing to pursue injunctive relief based on a risk of future harm even absent a separate present harm. *See Webb*, 72 F.4th at 375. *Webb* does not foreclose injunctive relief here because the court found plaintiffs did not have standing for injunctive relief based on redressability grounds—not future risk of harm. Mot. at 6 n.1 (citing *Webb*, 72 F. 4th at 376).

[2] Defendants' reliance on *Hartigan v. Macy's, Inc.*, 501 F. Supp. 3d 1, 5 (D. Mass. 2020), is misplaced for the same reason. *See* Mot. at 5.

6

### 2.    Plaintiffs' Injuries Are Traceable to the Data Breach

Traceability requires that a plaintiff show "a sufficiently direct causal connection between the challenged action and the identified harm." *Katz*, 672 F.3d at 71 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Traceability "does not require a tort-like showing of proximate causation." *Conservation Law Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 90 (1st Cir. 2025). Plaintiffs satisfy the traceability element of standing in the data breach context by sufficiently alleging the defendants' actions led to the exposure and actual or potential misuse of the plaintiffs' PII/PHI. *In re MAPFRE Data Disclosure Litig.*, No. 1:23-cv-12059-IT, 2025 U.S. Dist. LEXIS 62111, at *25 (D. Mass. Mar. 31, 2025) (quoting *Webb*, 72 F.4th at 377).

Plaintiffs allege Defendants failed to "implement and maintain reasonable security procedures and practices to protect their patients' PII/PHI from unauthorized access and disclosure," and "[a]s a result . . . the Data Breach occurred, and Plaintiffs' and Class members' PII/PHI was accessed and disclosed" by cybercriminals. Compl. ¶¶ 4–5. Defendants' delay in notifying Plaintiffs of the Data Breach "virtually ensured that the unauthorized third parties who exploited [their] security lapses could monetize, misuse, or disseminate that PII/PHI." *Id.* ¶¶ 85–86. This is underscored by the publications of Plaintiffs' and Class members' PII/PHI on the dark web for other criminals to access and misuse. *Id.* ¶¶ 81–83. As a result, Plaintiffs have suffered actual harm and face an ongoing substantial risk of future fraud and identity theft. *See id.* ¶¶ 13–16, 23–25, 32–34, 41–44, 51–55, 62–65, 86, 104. Plaintiffs sufficiently allege their injuries are traceable to Defendants. *See In re LastPass*, 742 F. Supp. 3d at 121–22.

Defendants assert the fraud and spam Plaintiffs suffered as a direct result of the Data Breach are not traceable to the Data Breach unless card numbers or phone numbers were affected in the Data Breach. Mot. at 7–8. This argument fails because it raises factual issues not ripe for resolution upon a motion to dismiss. *In re MAPFRE*, 2025 U.S. Dist. LEXIS 62111, at *28; *In re*

*MOVEit*, 2024 U.S. Dist. LEXIS 224712, at *75–76. For example, Defendants' website data breach notice states the PII/PHI affected in the Data Breach includes "financial information" and "other personal . . . information." Compl. ¶ 80. Drawing inferences in favor of Plaintiffs, it is entirely plausible that financial information includes card numbers used to pay for Defendants' services, and that other personal information includes phone numbers and email addresses.

In *Priddy*, this Court rejected the defendant's argument "that no credit or debit card data was impacted in the Data Breach . . . so [plaintiffs'] alleged credit and debit card fraud cannot be traced to the Data Breach," because the plaintiffs alleged cybercriminals could have combined information from the data breach with information from other sources to perpetrate fraud on the victims. 2025 U.S. Dist. LEXIS 62112, at *15–16. Here, Plaintiffs similarly allege the "PII/PHI exposed in the Data Breach can also be combined with other information about victims of the Data Breach," increasing Plaintiffs' risk because "as this information pools together, hackers use it to fuel other criminal operations, combining details and reusing them for subsequent attacks." Compl. ¶¶ 83 (internal quotations omitted), 91 ("the information exposed in the Data Breach, can be readily aggregated with other such data and become . . . more damaging to victims"). Plaintiffs have plausibly alleged their injuries are traceable to Defendants. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *15–16; *In re MAPFRE*, 2025 U.S. Dist. LEXIS 62111, at *29 (traceability met where plaintiffs alleged the breached information "can aid the forms of financial fraud that they have suffered").

The cases Defendants cite to the contrary are not persuasive. Mot. at 7. In *Harvey*, the court found fraudulent credit card charges were not traceable to the data breach because the defendant's data breach notice "specifically note[d] that credit card numbers were *not* impacted." *Harvey v. Nat'l Amusements, Inc.*, No. 24-10027-GAO, 2025 U.S. Dist. LEXIS 57256, at *6–7 (D. Mass.

8

Mar. 27, 2025) (emphasis in original). *Hartigan* was dismissed on concrete injury grounds and that opinion does not discuss traceability. *Hartigan*, 501 F. Supp. 3d at 5.

Plaintiffs' complaint adequately establishes their injuries are traceable to Defendants, and thus they have standing to pursue their claims.

### B.     Plaintiffs Adequately Pleaded Their Claims for Relief

#### 1.     Plaintiffs Have Sufficiently Pleaded Their Negligence Claim

To state a negligence claim, a plaintiff must adequately allege: (1) a legal duty owed by a defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) the breach was the proximate cause of the plaintiff's injuries; and (4) actual damage or injury. *Ryba v. LaLancette*, 417 F. Supp. 2d 199, 204 (D. Mass. 2006) (applying Massachusetts law). Plaintiffs allege Defendants assumed or owed a legal duty to protect Plaintiffs' PII/PHI from unauthorized disclosure, Compl. ¶¶ 4, 72–78, 87–96, 117–121, Defendants breached their duty by failing to comply with cybersecurity industry standards, *id.* ¶¶ 85–87, 122–25, the Data Breach would not have occurred had Defendants properly safeguarded their data systems, *id.* ¶¶ 104, 125–26, and that as a result Plaintiffs suffered actual injuries, *id.* ¶¶ 13, 23, 33, 41, 42, 52, 62, 126.

Defendants argue Plaintiffs do not adequately allege negligence because Plaintiffs have not alleged cognizable injury or that the Data Breach proximately caused their claimed injuries. Mot. at 9–11. As explained below, both of Defendants' arguments fail.

##### a.     Plaintiffs Allege Actual Injury

Defendants claim that Plaintiffs have pleaded only an increased risk of harm due to the Data Breach and that this "risk" is insufficient to infer actual damages. Mot. at 10. This argument ignores multiple allegations in the Complaint and multiple decisions from this Court.

In *In re Shields*, this Court found plaintiffs sufficiently alleged damages to state a negligence claim following a data breach where they alleged a risk of future harm requiring them

9

to "closely monitor their financial accounts to guard against identity theft" and actual misuse of some plaintiffs' PII/PHI. *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. 2024). Similarly, in *Priddy* this Court found plaintiffs adequately pleaded damages where they alleged expending time and money to address and mitigate future harms due to the breach and actual misuse of their PII/PHI. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *37; *Weekes*, 723 F. Supp. 3d at 103 (similar).

Like the plaintiffs in *In re Shields* and *Priddy*, Plaintiffs here alleged that private information exfiltrated as part of the Data Breach has subsequently been misused to commit financial fraud. Compl. ¶¶ 13, 23, 41. Plaintiffs also alleged that they have—and will continue to—expend significant time and money to address the harms they have already suffered and expect to incur in the future. *Id.* ¶¶ 13, 23, 33, 42, 52, 62; *In re LastPass*, 742 F. Supp. 3d at 123 (finding similar damages allegations sufficient). Plaintiffs have also adequately pleaded damages in the form of a significant increase in spam and emotional distress. Compl. ¶¶ 14, 24, 32, 41, 54; *In re Shields*, 721 F. Supp. 3d at 161 (noting "other Plaintiffs report an increase in suspicious calls from scammers and phishers" and finding that, "[i]n light of an increase in suspicious activities" plaintiffs plausibly alleged the necessity of continuous monitoring of their online accounts such that the element of injury was satisfied). Plaintiffs have sufficiently alleged damages.

### b.    Plaintiffs Sufficiently Allege Causation

Defendants argue that Plaintiffs fail to connect their injuries to the Data Breach.[3] Mot. at 11. Causation may be found where the injury to the plaintiff was a foreseeable result of the

---

[3] Defendants' causation argument is simply a rehash of their traceability argument and fails for the same reasons. *Compare* Mot. at 11, *with Priddy*, 2025 U.S. Dist. LEXIS 62112, at *38 (noting defendant waived causation argument as to negligence claim where defendant "argue[d] in passing that Plaintiffs failed to plead causation" by simply "referring back to the traceability issue for standing").

defendant's negligent conduct. *Portier v. NEO Tech. Sols.*, No. 3:17-cv-30111-TSH, 2019 U.S. Dist. LEXIS 227494, at \*37 (D. Mass. Dec. 31, 2019) (citations omitted), *report and recommendation adopted* 2020 U.S. Dist. LEXIS 28518 (D. Mass. Jan. 30, 2020). Plaintiffs allege Defendants knew or should have known of the foreseeable risk of a data breach, Compl. ¶¶ 87–96, 120, 124, that Defendants' failure to protect Plaintiffs' PII/PHI would foreseeably "result in the unauthorized release, disclosure, and dissemination of Plaintiffs' . . . PII/PHI to unauthorized individuals," *id.* ¶¶ 124–25, and as a result Plaintiffs were injured, *id.* ¶¶ 125–26. These allegations are sufficient to establish causation at the motion to dismiss stage. *Portier*, 2019 U.S. Dist. LEXIS 227494, at \*37 (allegations of foreseeable third-party hacking raised plausible inference of causation); *Shea v. Am. Int'l, Coll.*, No. 1:24-CV-114499-AK, 2025 U.S. Dist. LEXIS 173358, at \*11–12 (D. Mass. Sept. 5, 2025).

Defendants' claim that Plaintiffs have failed to allege a connection between the value of their personal information and economic loss suffered as a result of the Data Breach fails because Plaintiffs' allegations of lost value suffice to establish that causal connection. *In re Moveit Customer Data Sec. Breach Litig.*, No. 1:23-md-3083-ADB-PGL, 2025 U.S. Dist. LEXIS 147106, at \*88 (D. Mass. July 31, 2025).

### c.    Plaintiffs' Negligence Claims Are Not Barred by the Economic Loss Doctrine

Defendants argue that Plaintiffs' negligence claims are barred by the economic loss doctrine. Mot. at 13. This argument fails because "Massachusetts courts have declined to apply the economic loss doctrine to tort claims against a fiduciary." *In re Shields*, 721 F. Supp. 3d at 161. "Under Massachusetts law, a fiduciary relationship exists between a healthcare provider and a patient." *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 148 (D. Mass. 2024). Plaintiffs allege they were required to provide their PII/PHI to Defendants in order to receive medical care

11

and were entirely reliant on Defendants to protect that information. Compl. ¶¶ 8–9, 18–19, 27–28, 36–37, 46–47, 57–58, 72, 75, 79, 123. Defendants, as healthcare providers, should reasonably have foreseen the risk of a data breach and taken steps to guard against that risk. *Id.* ¶¶ 75, 87–96, 120–21, 124. Plaintiffs have established a fiduciary relationship with Defendants, and the economic loss doctrine does not bar Plaintiffs' negligence claims. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *31, 33–34; *In re Shields*, 721 F. Supp. 3d at 161; *Doe*, 731 F. Supp. 3d at 148.

Further, Defendants owed (and breached) common law and statutory duties of care to protect Plaintiffs' PII/PHI. Compl. ¶¶ 4, 117–19, 122, 125; *see Portier*, 2019 U.S. Dist. LEXIS 227494, at *29–35, 56 (finding common law duty to protect PII); *Webb v. Injured Workers Pharmacy, LLC*, No. 22-cv-10797, 2023 U.S. Dist. LEXIS 161097, at *4 (D. Mass. Sept. 11, 2023); *see also Weekes*, 723 F. Supp. 3d at 103 (noting "other sessions of this Court have found a duty to protect PII from foreseeable cyberattacks in the data breach context"). Courts applying Massachusetts law have declined to apply the economic loss doctrine where a negligence claim is based on a breach of noncontractual duties. *See Portier*, 2019 U.S. Dist. LEXIS 227494, at *57 (collecting cases); *Shedd v. Sturdy Mem'l Hosp.*, No. 2173CV00498C, 2022 Mass. Super. LEXIS 7, at *22 (Apr. 5, 2022) (endorsing and following *Portier*'s reasoning).

### 2.    Plaintiffs Adequately Plead Breach of Fiduciary Duty

Defendants argue that Plaintiffs' "attempt" to impose trust and confidence in Defendants does not create a fiduciary relationship. Mot. at 17. A fiduciary duty is created when one reposes faith, confidence, and trust in another's judgment and advice. *De Prins v. Michaeles*, 189 F. Supp. 3d 209, 214 (D. Mass. 2016). A person who assumes a fiduciary relation to another is under a duty "to act for the benefit of the other as to matters within the scope of the relation." *Doe v. Harbor Sch., Inc.*, 843 N.E.2d 1058, 1064 (Mass. 2006) (citation omitted). Under Massachusetts law, a special relationship that gives rise to a fiduciary duty may be inferred where "a defendant

12

reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so." *Adams v. Cong. Auto Ins. Agency, Inc.*, 65 N.E.3d 1229, 1235 (Mass. App. Ct. 2016).

In *Priddy*, this Court found the defendant assumed a fiduciary duty where plaintiffs alleged they entrusted their information to defendant "either as a condition of their employment or as a condition of receiving products and services from" defendant. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *33 (alteration and quotations omitted). The Court also noted that "[defendant] could reasonably foresee from the nature of its products and services that it would be expected to take affirmative action to protect Plaintiffs' Private Information and could anticipate harm to Plaintiffs in the absence of such action." *Id.* Similarly, Plaintiffs alleged that "[a]s a condition of obtaining [medical] services from Defendants, Plaintiffs and Class members gave Defendants their PII/PHI in confidence, believing that Defendants would protect that information." Compl. ¶ 128; *see also id.* ¶¶ 9, 19, 28, 37, 47, 58. Plaintiffs have also alleged that the nature of the information obtained by Defendants was such that Defendants could reasonably foresee that they would be expected to take action to protect Plaintiffs' PII/PHI and could anticipate harm to Plaintiffs if they failed to do so. *Id.* ¶¶ 87–96. Plaintiffs have adequately alleged the existence of a fiduciary relationship with Defendants. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *38; *In re Shields*, 721 F. Supp. 3d at 165; *see also Doe*, 731 F. Supp. 3d at 148.[4]

---

[4] Notwithstanding any fiduciary duty to Plaintiffs and Class members, Defendants also have a separate duty of care under common law negligence to keep PII/PHI secure and protect Plaintiffs and Class members from reasonably foreseeable harm. *See* § III.B.1, *supra.*

13

### 3.    Plaintiffs Plausibly Plead a Breach of Implied Contract Claim

Plaintiffs plausibly allege that an implied contract with Defendants existed and that this contract was breached. Under Massachusetts law, a contract can be implied in fact or implied in law. In "the absence of an express agreement, an implied contract may be inferred from the conduct of the parties and the relationship of the parties." *In re Shields*, 721 F. Supp. 3d at 162 (internal quotations omitted) (citing *T.F. v. B.L.*, 813 N.E.2d 1244, 1249 (Mass. 2004)).

This Court has previously found that plaintiffs plausibly alleged an implied-in-law contract with a health system where plaintiffs alleged they would "receive medical treatment in exchange for providing confidential health and financial information, which [defendant] was reasonably expected to keep private consistent with relevant data privacy laws." *See id.* at 163 (finding a plausible implied contract by healthcare provider to protect private information patients were required to disclose); *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *45 (similar).

Moreover, the First Circuit found an implied contract in a data breach case in *Anderson*, holding that customers typically do not anticipate merchants will permit unauthorized third parties to access their data, and thus "[a] jury could reasonably conclude, therefore, that an implicit agreement to safeguard the data is necessary to effectuate the contract." *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 158–59 (1st Cir. 2011).[5] Similarly, the court in *Shedd v. Sturdy Mem'l Hosp., Inc.* upheld a breach of implied contract claim in a data breach case under Massachusetts law because "[w]hen a patient hands over sensitive information to receive medical care, they expect an implicit assurance that the information will be protected." 2022 Mass. Super. LEXIS 7, at *28.

---

[5] Although *Anderson* was decided under Maine law, its reasoning is equally applicable under Massachusetts law, particularly where highly sensitive information like Social Security numbers and medical information is involved. Unlike the payment card data in *Anderson*, this information cannot be easily canceled or changed, underscoring their critical nature.

14

Defendants' claim that Plaintiffs have not alleged a meeting of the minds or mutual intent to support the contract terms is baseless. Defendants' acceptance of Plaintiffs' PII/PHI as a condition of service is a clear manifestation of this assent. Plaintiffs expressly allege that Defendants, through their own assurances and representations, assumed legal and equitable duties to protect Plaintiffs' PII/PHI and that Plaintiffs reasonably expected that Defendants would comply with federal and industry standards to protect this information. Compl. ¶¶ 8–9, 12, 18–19, 22, 27–28, 31, 36–37, 40, 46–47, 50, 57–58, 61, 78, 133–38.

The cases Defendants cite lack the affirmative representations about data protection, compulsory disclosure of highly sensitive medical information, and the heavily regulated healthcare context that creates reasonable expectations of confidentiality here. *See Weekes*, 723 F. Supp. 3d at 104 (dismissal based on lack of implicit data protection in legal services agreements); *Harvey*, 2025 U.S. Dist. LEXIS 57256, at *9 (dismissal based, in part, on, failure to establish mutual understanding about data security between theater patron and entertainment venue); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (stolen laptop from retail location with no affirmative representations about data security); *Webb*, 2023 U.S. Dist. LEXIS 161097, at *8–9 (dismissing claim because the factual allegations supporting the claim "consist[ed] exclusively of post-breach assurances given by [defendant] (one year after the breach)" which had "no value in any assessment of whether a contract existed at the time that plaintiffs allege").

Alternatively, Plaintiffs allege a contract implied in law under which they can prevail. *See In re Shields*, 721 F. Supp. 3d at 163 ("Even in the absence of allegation of assent either expressly or by conduct, Plaintiffs can prevail if they demonstrate a contract implied in law."). A contract implied in law is an obligation created by law "for reasons of justice, without any expression of

15

assent and sometimes even against a clear expression of dissent." *In re Shields*, 721 F. Supp. 3d at 163 (citation omitted); *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *44. It is appropriate for the Court to find a contract implied in law when, as here, "reasonable expectations" of the plaintiffs would otherwise be "defeated." *In re Shields* (citation omitted). Whether an implied contract exists is a question of fact. *Lockwood v. Madeiros*, 506 F. Supp. 3d 73, 81 (D. Mass. 2020). Here, as in *Shields* and *Priddy*, Defendants are healthcare providers subject to both HIPAA and the FTCA. Plaintiffs adequately plead that Defendants' violations of these federal laws, in conjunction with the Data Breach, resulted in a breach of implied contract. Compl. ¶¶ 118–19, 133. This Court should, therefore, deny Defendants' motion to dismiss Plaintiffs' breach of implied contract claim.

### 4.      Plaintiffs Plausibly Plead Breach of the Covenant of Good Faith and Fair Dealing

In Massachusetts, "[t]he covenant of good faith and fair dealing is implied in every contract." *Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004). This covenant protects against conduct that destroys or injures another party's right to receive the fruits of the contract, even if such conduct does not directly violate an express term. *See Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 820 (Mass. 1991). "In determining whether a party violated the implied covenant of good faith and fair dealing, we look to the party's manner of performance." *Robert & Ardis James Found. v. Meyers*, 48 N.E.3d 442, 450 (Mass. 2016). Contrary to Defendants' contention, Plaintiffs have adequately alleged the existence of an implied contract under which Defendants were obligated to protect Plaintiffs' PII/PHI. *See* § III.B.3, *supra.*

Defendants further assert that Plaintiffs have not sufficiently alleged bad faith. Mot. at 16. However, Plaintiffs alleged Defendants delayed notifying them of the Data Breach for nearly a year after discovering it and failed to notify them their PII/PHI was published on the dark web and freely available to cybercriminals. Compl. ¶¶ 85, 143–44. It is reasonable for Plaintiffs to expect

16

to be notified of the Data Breach with relevant details about the breach, including its scope and causes. *See id.* ¶ 75. Plaintiffs' allegations that Defendants have not provided accurate and timely notice to its patients about the Data Breach are sufficient to allege Defendants acted in bad faith. *In re Shields*, 721 F. Supp. 3d at 164; *In re LastPass*, 742 F. Supp. 3d at 129.

Defendants further represented in their Privacy Policy that they are required by law to "make sure medical information that identifies you is kept private" and promised that "uses and disclosures of medical information not covered by this notice or the laws that apply to us will be made only with your written permission." Compl. ¶¶ 75–76. These representations created reasonable contractual expectations that Defendants would safeguard Plaintiffs' PII/PHI. Defendants' failure both to secure Plaintiffs' information and to provide adequate notice of the breach demonstrates a lack of good faith and deprived Plaintiffs of the benefit of their bargain. *Id.* ¶ 145. Plaintiffs' allegations, taken as true at this stage, provide a sufficient basis to conclude that Defendants' conduct violated the implied covenant of good faith and fair dealing.

### 5.   Plaintiffs Adequately State a Claim for Unjust Enrichment

Defendants argue that the mere assertion of the other claims in Plaintiffs' Complaint precludes Plaintiffs' unjust enrichment claim. Mot. at 17. Defendants misunderstand the law regarding alternative pleadings.

Rule 8 is clear that Plaintiffs may plead an unjust enrichment claim in the alternative to other potential remedies. Fed. R. Civ. P. 8. Despite the mutual exclusivity of damages for breach of contract and unjust enrichment, it is accepted practice to pursue both theories at the pleading stage. *See Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 473 (D. Mass. 2018) ("plaintiffs may plead breach of contract and unjust enrichment as alternative theories, even though they are mutually exclusive"). At the motion to dismiss stage, Plaintiffs need not prove the absence of an adequate

17

remedy at law, especially where Plaintiffs' alleged alternative remedy is also disputed by Defendants. *Alantra LLC v. Apex Indus. Techs. LLC*, 636 F. Supp. 3d 223, 236 (D. Mass. 2022). In *Priddy*, this Court considered and rejected an argument identical to the one Defendants make here because the plaintiffs' implied contract claim was disputed by the defendant. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *39–40.

Defendants also allege that Plaintiffs cannot plead the elements of their unjust enrichment claim because they have not alleged that Defendants retained a benefit from the storage of Plaintiffs' PII/PHI. Mot. at 17–18. Defendants misconstrue Plaintiffs' argument.

"To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value." *Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*, 210 F. Supp. 3d 294, 309 (D. Mass. 2016). "A plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, a quality that turns on the reasonable expectations of the parties." *Webb*, 2023 U.S. Dist. LEXIS 161097, at *9 (citations and quotations omitted). This Court has found that data breach plaintiffs have adequately alleged a claim for unjust enrichment based on their expectations that a healthcare provider would use their payments, in part, to fund adequate data security when in fact the provider utilized cheaper, ineffective security measures, resulting in a data breach and exposure of plaintiffs' information. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *41–42; *In re Shields*, 721 F. Supp. 3d at 165 (declining to dismiss plaintiffs' unjust enrichment claim in a data breach case).

In *Priddy*, this Court found plaintiffs stated an unjust enrichment claim where they alleged they reasonably believed part of the price they paid to the defendant would be used to provide

18

adequate data security for plaintiffs' private information, but instead the defendant "utiliz[ed] cheaper, ineffective security measures and thus enriched itself by saving the costs [it] reasonably should have expended on data security measures." 2025 U.S. Dist. LEXIS 62112, at *40–42 (quotations omitted). Here, Plaintiffs similarly allege they "conferred a monetary benefit upon Defendants in the form of monies paid for healthcare or related services, with an implicit understanding that Defendants would use some of these payments to protect the PII/PHI they collect, store, and use to provide health care," but "Defendants failed to adequately implement the data privacy and security procedures that Plaintiffs and Class members paid for." Compl. ¶¶ 149, 152. The basis of Plaintiffs' unjust enrichment claim is Defendants' unjust retention of the portion of Plaintiffs' payments intended to be used for data security that Defendants did not provide, *id.* ¶¶ 149, 151–52, and not, as Defendants claim, that they somehow benefitted from the Data Breach itself. *See* Mot. at 18. These allegations are sufficient to state a claim for unjust enrichment at the motion to dismiss stage. *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *41–42; *In re Shields*, 721 F. Supp. 3d at 165 ("[defendant] unjustly enriched itself by accepting reimbursement for treatment but not using it 'to pay for the administrative costs of reasonable data privacy and security'").

### 6.    Plaintiffs' Sufficiently Plead a New Hampshire Consumer Protection Act Claim

After meeting and conferring with counsel for Plaintiffs, Defendants have agreed to withdraw their arguments for dismissal of Plaintiffs' New Hampshire Consumer Protect Act claim. ECF No. 85.

## IV.    Conclusion

For the reasons stated herein, the Court should deny Defendants' motion to dismiss in its entirety. Should the Court grant any part of Defendants' motion, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend.

19

Dated: October 8, 2025

Respectfully submitted,

/s/ David Pastor
David Pastor (BBO 391000)
**PASTOR LAW OFFICE, PC**
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Tel: 617-742-9700
Fax: 617-742-9701
dpastor@pastorlawoffice.com

*Plaintiffs' Local Counsel*

Ben Barnow (Pro hac vice)
Anthony L. Parkhill (Pro hac vice)
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

Charles E. Schaffer (Pro hac vice)
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
cschaffer@lfsblaw.com

Kevin Laukaitis (Pro hac vice)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Interim Co-Lead Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2025, a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: October 8, 2025

/s/ David Pastor
David Pastor

21